**Louray BARGER, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation, Defendant.**

No. P-2988.

United States District Court
S. D. Illinois, N. D.

Feb. 10, 1969.

Jordan A. Fifield, Goldsworthy & Fifield, Peoria, Ill., for plaintiff.

Eugene R. Johnson, Westervelt, Johnson, Nicoll & Keller, Peoria, Ill., for defendant.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause comes before the Court on defendant's motion for summary judgment avoiding a life insurance policy issued to Bruce L. Barger, plaintiff's deceased son, because the insured is claimed to have made material misrepresentations in the application for the policy. This cause was originally filed in the Circuit Court for the Tenth Judicial Circuit of Illinois and was removed by defendant to this court on the ground of diversity of citizenship.

The basic facts out of which this suit arises are not in dispute. On February 15, 1966, the decedent applied for a $10,000 non-medical life insurance policy (physical examination not required) with a supplementary "Accidental Death Benefit" of like amount. The policy was issued on March 15, 1966, with the plaintiff-father as beneficiary. A photocopy of the policy, including the application, is attached to the complaint. Decedent died on April 10, 1967 from causes not fully before the Court and not considered material to the issue here.

"Part 2" of the insurance application asked various questions pertaining to the medical history of the insured. Question 11 asked whether the applicant had "within the past 5 years, ever consulted or been attended by, or been examined by, or had a checkup by any physician or other practitioner?" The answer was "Yes." Question 12 asked if the applicant had "any known indication of any physical disorder, deformity, defect or abnormality not disclosed in the

answers to Questions 7 through 11?" The answer was "No." Question 17 asked, "What are the full particulars with respect to each and every part of Questions 6 through 16 to which the answer is 'Yes'?" The application shows the following answer: "11. Bruce: Routine exams required by school. Dr. W. Newcomer, Bartonville, Ill. Last examined Jan. 1966. In good health."

The affidavit of plaintiff establishes that he advised his son to see the family physician, Dr. Newcomer, prior to January 3, 1966, when the son complained of a charley horse-like pain in his left leg, but that this was his son's only complaint at any time other than childhood diseases.

The deposition of Dr. Wilbert S. Newcomer, who examined the decedent on January 3, 1966, just 43 days before the insurance application involved here, shows that he entered on his record a medical history given to him by the decedent as follows:

> "Having trouble with jerking of lateral side of left foot and migrates upwards and involves the whole left side of body and into left side of neck. Has happened twice in last week but has had trouble since the eighth grade (duration four years)."

It further appears from Dr. Newcomer's deposition that he had seen decedent 7 times previously in 1961 through 1964 for examinations, that none of these examinations disclosed the symptoms related on January 3, 1966; but that he made an examination and a diagnosis on that day "from the history and the exam" that "he was probably subject to petit mal seizures," which the doctor said were an epileptic type of seizure. He prescribed a drug to control the condition, and there is no showing that he told decedent or his parents of the diagnosis or suggested any further course of treatment.

Defendant contends that the failure of the insured to disclose in the answer to Question 17 the symptoms of the complaint which he gave to Dr. Newcomer only 43 days earlier (on an occasion which was not an examination "required by school"), plus the answer to Question 12, which was not true in view of this failure, were material misrepresentations which materially affected the acceptance of the risk by defendant. It further contends that such material misrepresentations render the policy void as a matter of law and hence there is no issue of material fact for trial.

Plaintiff contends that the symptoms disclosed to Dr. Newcomer were not considered serious by his son, that he was not aware of any diagnosis of epilepsy, that there was no intention to deceive, and therefore that the materiality of any application defects is a question of fact for the jury to determine.

The law of Illinois is applicable here. Section 766 of Chapter 73 of the Illinois Revised Statutes, provides in relevant part:

> "* * * No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. * * *"

The Supreme Court of Illinois has made it very clear that any single material misrepresentation which materially affects the appraisal of the risk by the company is grounds for cancelling the policy. Campbell v. Prudential Life Insurance Co., 15 Ill.2d 308, 155 N.E.2d 9 (1958). As this court said, on authority there cited, in Life Insurance Company of North America v. Roberson, 276 F.Supp. 639 (1967) at p. 641:

> "The materiality of the misrepresentation would ordinarily, of course, be a question of fact for the jury to decide unless the court finds, as it does here, that 'all persons would agree that (it is) material.'"

This court considers that the materiality of the misrepresentation is equally clear here. The cases differ only in the diseases involved and it is presumably apparent that cancer is more serious than petit mal epilepsy. However, in

neither case is it shown that the applicant knew of the diagnosis, so that can have no relevance. In *Roberson,* the failure was to disclose an extended course of treatment. Here, the failure was to disclose a known set of symptoms.

This court cannot conceive impartial questioning of the fact that, had the defendant been informed of the symptoms of four years' standing which were disclosed by the decedent to Dr. Newcomer, it would at least have had a medical examination and evaluation before issuing a policy. The affidavit of its Associate Medical Director asserts that disclosure of these symptoms would have required rejection of the policy under its underwriting rules. Thus this omission, whether careless or intentional, must be said to have materially affected the acceptance of the risk by the defendant. The insured's answer to Question 12 and the answers in Question 17, "Routine exams required by school," and "In good health," can only be described as false and misleading, adding to the material misrepresentations which obviously must have affected the acceptance of the mortality risk by the defendant. This application clearly deprived the insurer of the opportunity to discover and evaluate the true physical condition of the applicant which it needed to evaluate the insurance hazard it was being asked to undertake. See Rubin v. Metropolitan Life Ins. Co., 308 Ill.App. 607, 32 N.E.2d 359 (1941).

The Court has considered the affidavits of Lila Vickerman and Thomas L. Hay filed by plaintiff. The first states that life insurance was issued on the life of her son by another company after full disclosure of a long history of "grande mal" epileptic seizures controlled by medication. The second says that the company which issued the Vickerman policy may write epileptics after evaluation of some six different considerations involving the affliction. It is noted that these affidavits either reflect or show the need for a full disclosure of the physical condition of the applicant, and

evaluation thereof, before the policy is issued. The avoidance of that opportunity for the insurer is considered the fatal defect here.

Plaintiff relies on Marshall v. Metropolitan Life Ins. Co., 405 Ill. 90, 90 N.E.2d 194 (1950). In that case the defendant insurance company sought to avoid a life insurance policy upon discovery that the insured had failed to mention consultation and treatment for a one-day attack of nausea and vomiting after heavy eating and drinking, which the doctor had told him might be a gallbladder attack. The Court rejected that argument because the incident was very short and easily forgotten and there were no clear symptoms of a gallbladder condition. It is the failure to disclose the known unusual symptoms of long standing which distinguish that case and which is considered decisive here.

The case of LaPenta v. Mutual Trust Life Insurance Co., 4 Ill.App.2d 60, 123 N.E.2d 165 (1954), relied upon by plaintiff, is also distinguishable on the facts. There the insurance company argued the failure of the insured to mention treatment for gallstones constituted a material misrepresentation. The Court found that the evidence did not establish gallstones at the time of application, and hence, on disputed facts, that a finding of no material misrepresentation was sustainable. In the instant case there are clear symptoms of an unusual physical condition known to the applicant and related by him to his physician, which he failed to mention to the insurance company only 43 days later.

None of the other cases cited by plaintiff are considered inconsistent with or closely in point to the decision here made.

■■ The lack of knowledge on the part of both the decedent and his father-beneficiary of Dr. Newcomer's diagnosis and the fact that Dr. Newcomer did not consider the condition serious enough to refer the decedent to a specialist are clearly not relevant to the question in this case. Neither is being charged with fraud or deliberate misrep-

resentation. It is the symptoms of which decedent was clearly aware and which he did not disclose, and which clearly were material to the risk, which must relieve the insurer of the risk it did not voluntarily assume. Deceit upon the part of an applicant or beneficiary is not required, by the Illinois statute or the cases, if the insurer was in fact misled in a material way on the risk it was assuming.

Plaintiff filed a motion to strike the affidavit of Dr. Thomas Predey, which was filed in support of the motion for summary judgment. Insofar as said motion to strike is considered to have any merit as to some of the statements in said affidavit, such statements are not relied upon by the Court and the motion to strike is denied.

Accordingly, defendant's motion for summary judgment is allowed and judgment against plaintiff on his complaint is entered, at plaintiff's cost.